IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JANICE D. CRAIG,                    )
                                    )
              Plaintiff,            )
                                    )
                                    )        CIV-12-643-M
v.                                  )
                                    )
CAROLYN W. COLVIN,                  )
  Acting Commissioner of Social     )
  Security Administration[1],       )
                                    )
              Defendant.            )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her application for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §§ 416(i), 423.   Defendant has answered the

Complaint and filed the administrative record (hereinafter TR___), and the parties have

briefed the issues.   The matter has been referred to the undersigned Magistrate Judge for

initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   For the following reasons, it

is recommended that the Commissioner's decision be affirmed.

---

[1]Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration
on February 14, 2013.   Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Acting
Commissioner Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant
in this action.  No further action need be taken to continue this action. 42 U.S.C. § 405(g).

1

I. Background

Plaintiff protectively filed her application for benefits on December 14, 2008.  She alleged that she was unable to work beginning February 1, 2008, due to reduced intellectual functioning, dyslexia/reading impairment, thalassemia[2], anemia, "[f]ainting spells," obesity, and "[c]olon problems." (TR 170).  Plaintiff was 33 years old when she sought benefits, and she previously worked as a retail clerk and service cashier.  Her application was denied initially and on reconsideration.   At Plaintiff's request, a hearing was held before Administrative Law Judge Hiltbrand ("ALJ") in December 2010 at which Plaintiff and a vocational expert ("VE") testified.  (TR 15-48).  The ALJ determined that Plaintiff was not disabled at step five of the governing five-step sequential analysis. (TR 55-68). See Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(explaining five-step evaluation)(quotations and citations omitted).

In his decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 1, 2008, the date she alleged her disability began.  Following the well-established sequential evaluation procedure adopted by the agency, see 20 C.F.R. § 404.1520(b)-(f), the ALJ found at step two that Plaintiff had severe impairments of degenerative disc disease, arthritis, thalassemia, depression, borderline intellectual functioning, learning disorder, dyslexia, anxiety disorder, and obesity. (TR 57).  At step

_____

[2]"Thalassemia is a blood disorder passed down through families (inherited) in which the body makes an abnormal form of hemoglobin, the protein in red blood cells that carries oxygen.  The disorder results in excessive destruction of red blood cells, which leads to anemia." http://www.nlm.nih.gov/medlineplus/ency/article/000587.htm.

three, the ALJ found that Plaintiff's medically determinable impairments did not meet or

equal the requirements of an impairment deemed disabling *per se* under the agency's Listing

of Impairments.   At step four, the ALJ found that Plaintiff had the residual functional

capacity ("RFC") to perform work at the light exertional level[3] with the restriction that she

can "understand, remember, and carry out simple tasks with routine supervision.   She can

interact appropriately with others at a superficial level, but not the general public." (TR 61).

Based on this RFC and the testimony of the VE, the ALJ found that Plaintiff was not capable

of performing her previous jobs but she was capable of performing other jobs available in

the national economy, including the jobs of shirt presser, laundry sorter, and housekeeper.

(TR 67).   The Appeals Council denied Plaintiff's request for review (TR 1-3), and therefore

the ALJ's decision is the final decision of the Commissioner.   See 20 C.F.R. § 404.981, Wall

v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a

determination of whether the ALJ's factual findings are supported by substantial evidence

in the record and whether the correct legal standards were applied.   Wilson v. Astrue, 602

F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as

---

[3]Light work is defined as work involving lifting objects weighing up to 20 pounds at a time, frequently lifting or carrying objects weighing up to 10 pounds, and mostly walking or standing, or sitting with pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." Lax, 489 F.3d at 1084.  The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Step Three - Listing 12.05 for Mental Retardation

Plaintiff contends that her intellectual functioning level meets or equals the requirements of the agency's Listing 12.05(C) for mental retardation. At step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987).  "[S]tep three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Id. at 153.  "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Id. at 141.

"In order to satisfy listing 12.05, a claimant must meet the requirements of that listing's capsule definition as well as one of the four severity prongs for mental retardation as listed in the regulations." Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009)(internal quotations and citation omitted).  The capsule definition for listing 12.05 states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in

adaptive functioning initially manifested during the developmental period . . . before age 22."

20 C.F.R. pt. 404, subpt. P, app. 1, §12.05.  The severity prong at 12.05(c) requires evidence

of a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other

mental impairment imposing an additional and significant work-related limitation of

function." Id. (quotations and citation omitted).

In an unpublished decision, Crane v. Astrue, 369 Fed.Appx. 915 (10th Cir. 2010), the

Tenth Circuit Court of Appeals recognized that with respect to listing 12.05(c) the Social

Security Administration had adopted a policy statement in its Program Operations Manual

System ("POMS") providing that

> [s]lightly higher IQ's (e.g., 70-75) in the presence of other
> physical or mental disorders that impose additional and
> significant work-related limitation of function may support an
> equivalence determination.  It should be noted that generally the
> higher the IQ, the less likely medical equivalence in
> combination with another physical or mental impairment(s) can
> be found.

Id. at 921 (quoting POMS No. DI 24515.056(D)(1)(c).  The court recognized that "[t]his

evaluation tool, however, is used only when 'the capsule definition of that impairment is

satisfied.'" Id. (quoting POMS No. DI 24515.056(B)(1)).

The ALJ recognized that Plaintiff had a borderline IQ with a verbal IQ score of 75,

a full scale IQ of 72, and a performance IQ of 73. (TR 60).  Addressing the capsule definition

of listing 12.05, the ALJ found that Plaintiff's mental impairment did not meet or equal the

requirements of the listing.  As reasons, the ALJ found that Plaintiff "attained a high school

diploma, passed a written driver's license test, and has a long work history of unskilled to

semi-skilled work beginning in 1993 at age 18" and therefore Plaintiff had not shown the required deficits in adaptive functioning before age 22.  (TR 61).

Although Plaintiff points to several instances in the record indicating her early school environment showed educational deficits, including math and reading learning disorders, Plaintiff has not challenged the ALJ's findings regarding her later high-functioning achievements before the age of 22.[4]   There is substantial evidence in the record to support the ALJ's step three finding that Plaintiff's mental impairment due to borderline intellectual functioning does not meet or equal the requirements of listing 12.05, and no error occurred in the ALJ's analysis at step three.

As a subargument, Plaintiff contends that the ALJ erred by failing to expressly consider "the entire report of Dr. Beesley" and "the entire report of Dr. Kates." Plaintiff's Brief, at 26.  The ALJ must "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1995). The ALJ expressly adopted Dr. Kates' findings regarding Plaintiff's intellectual functioning. (TR 60). Thus, Plaintiff's argument with regard to Dr. Kates' report is without merit. Additionally, the report of a psychoeducational evaluation of Plaintiff conducted the University of Oklahoma's Counseling Psychology Clinic in March 2003 was prepared under the supervision of Dr. Denise Beesley, Ph.D., but

_____

[4]The Plaintiff points to the results of intellectual testing that was completed when she was 28 years old.  Plaintiff does not indicate how this intellectual testing reflects deficits in adaptive functioning during the relevant development period, as required by the listing.  In fact, that testing showed Plaintiff exhibited a full scale IQ of 79, outside the range of satisfaction or equivalency, even under the agency's POMS.

the evaluator was Ms. Dinah Cloud, B.A. (TR 255-260). This evaluation was conducted at Plaintiff's request because she reportedly was "interested in qualifying for disability status for government jobs if she still had learning disabilities." (TR 255). First, this report was not authored by a treating mental health professional and was therefore not entitled to controlling weight. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994)(ALJ must give controlling weight to a well-supported treating physician's opinion about the nature and severity of a claimant's impairments, so long as the opinion is consistent with other substantial evidence in the record).

Additionally, Plaintiff worked following this evaluation, the dates of the evaluation listed in the report precede Plaintiff's alleged disability date by five years, and the evaluator found that Plaintiff would do well "in a career in which she interacted with others" due to her excellent social skills. The ALJ did not err in failing to expressly consider the contents of this report as it did not provide uncontroverted evidence the ALJ chose not to rely on or significantly probative evidence the ALJ rejected.

IV. RFC Assessment and Hypothetical Questioning of VE

Plaintiff next contends that there is not substantial evidence to support the ALJ's RFC assessment and that the ALJ erred in misinterpreting the VE's responses to hypothetical questioning. At step four, the ALJ must determine whether the claimant retains the RFC to perform the requirements of all past relevant work. RFC represents "the most [that the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

The ALJ found at step four that Plaintiff could perform a wide range of light work

except that due to mental impairments she had "moderate" restrictions of activities of daily living, "moderate" difficulties in maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence, and pace and as a result of these functional limitations she could "understand, remember, and carry out simple tasks with routine supervision" and she could "interact appropriately with others at a superficial level, but not the general public." (TR 61).

In reaching this RFC finding, the ALJ considered Plaintiff's testimony and statements in the record and Plaintiff's sister's testimony and statements in the record. (TR 62-64).   The ALJ provided reasons that are well supported by the record for finding these statements and testimony only partially credible.

The ALJ also considered the report of the consultative psychological examiner, Dr. Rodgers, Ph.D., who opined after evaluating Plaintiff in July 2009 that Plaintiff "would be able to understand, remember and carry out simple and single instructions; however, it is unlikely that she would be able to do the same with complex and/or multiple tasks or instructions." (TR 824).   The only definitive diagnosis made by Dr. Rodgers was borderline intellectual functioning. (TR 824).   During a mental status examination, Dr. Rodgers noted that Plaintiff was able to follow a 3-stage command and demonstrated good working memory as well as the ability to abstractly reason and show good social judgment. (TR 824).

The ALJ determined that Dr. Rodgers' opinion was entitled to "little weight" because the mental status examination showed Plaintiff could follow a 3-stage command, Plaintiff had "worked with her impairment at levels of semi-skilled work," and Plaintiff's sister

testified that Plaintiff was able to perform a list of household chores.  (TR 64).  The ALJ gave "more weight" to the opinions of the agency's medical consultant, Dr. Massad, Ph.D., who opined that Plaintiff had "sufficient concentration and memory to do simple, repetitive tasks but no[t] detailed or complex tasks" and "would be limited in the ability to work with the general public." (TR 842).   The ALJ also gave "more weight" to the assessment of an examining psychologist, Dr. Kates, who stated following an evaluation of Plaintiff in April 2008 that Plaintiff "maintained good attention and concentration, . . . appeared to understand all questions and directions given," . . . displayed good work skills and worked at an adequate speed," and further opined that vocational "[a]ssistance in locating a job certainly seems to be an appropriate goal for" Plaintiff. (TR 457-458).

The ALJ provided valid reasons for giving Dr. Rodgers' opinion little weight, emphasizing that Dr. Rodgers was an examining, not a treating source, that the opinion was inconsistent with Dr. Rodgers' own findings regarding Plaintiff's ability to follow multiple instructions, and that the opinion was inconsistent with the opinions of other examining and non-examining sources.  "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007)(internal quotations and citation omitted).   ALJ's must also "consider the consistency between [a medical source] opinion and the record as a whole." Id.  The ALJ's assessment of Dr. Rodger's opinion is supported by substantial evidence in the record, and the ALJ did not err in giving the opinion "little weight" under the circumstances.

Plaintiff contends that in making the RFC assessment the ALJ failed to include

Plaintiff's "diarrhea" as a limitation on her ability to work.  Plaintiff points to several office notes of various treating physicians indicating that Plaintiff was treated for diarrhea. However, no treating or examining physician indicated that diarrhea was a persistent symptom that interfered with Plaintiff's ability to work.

The ALJ recognized in the decision that the medical record reflected short-term treatment of Plaintiff for a multitude of problems, including headaches, cough, asthma, sleep apnea, diarrhea, dizziness, GERD, red eyes, red patches on her face, hemorrhoids, sinusitis, right-sided facial weakness, thyroid disease, blurry vision, and otitis externa. (TR 58).  The ALJ reasoned that Plaintiff had "obtained minimal follow-up treatment for these conditions, suggesting that her medical treatment largely was for temporary impairments or for those imposing no or slight limitations," that Plaintiff did not take prescription medication for digestive tract disorders, that abdominal, esophagogastroduodenoscopy and colonoscopy testing was normal, and that the agency's reviewing medical consultant, Dr. Woodcock, opined that Plaintiff's allegations of gastrointestinal and other minor conditions did not limit her functional capacity.  (TR 58, 786).

Plaintiff points out that Dr. Woodcock did note that at the time of his assessment (February 2009) Plaintiff was experiencing diarrhea two to three times a day. (TR 786).  Dr. Woodcock did not indicate the medical evidence upon which this statement was based. Moreover, Plaintiff does not point to any medical evidence in the record reflecting that this symptom persisted for any period of time despite medical treatment or that it was related to a medical impairment that had not been effectively treated with medications and/or surgical

procedures.   The ALJ did not err in including specific limitations in the RFC assessment for diarrhea.

The ALJ's hypothetical questioning of the VE included all of the limitations the ALJ found were supported by the evidence.  Plaintiff's argument (labeled "Legal Argument # 3") that the ALJ failed to expressly consider certain evidence in the record has previously been addressed herein.  Specifically, Plaintiff points to the 2003 report of an evaluation of Plaintiff by Ms. Cloud (TR 255-260), the 2008 report of the consultative psychological evaluation of Plaintiff conducted by Dr. Kates (TR 455-458), and Dr. Rodgers' report of her consultative psychological evaluation of Plaintiff in July 2009 (TR 823-824).  The ALJ's assessment of these reports has been addressed, and Plaintiff's repetitive arguments do not warrant additional discussion.

Plaintiff points to one medical source opinion that has not been discussed, that of Dr. Speegle.  The record contains a one-page "Medical Opinion Regarding Mental Residual Functional Capacity" containing a check-list form completed by David Speegle in February 2012. (TR 875).  Plaintiff states that this medical source opinion was provided to the Appeals Council with Plaintiff's request for review of the ALJ's decision.

Generally, it is a well-established principle that "the Appeals Council must consider additional evidence offered on administrative review - after which it becomes a part of [the] record on judicial review - if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision." Krauser v. Astrue, 638 F.3d 1324, 1328 (10th Cir. 2011).  In this case, the Appeals Council accepted the new evidence submitted by Plaintiff

without differentiating whether the evidence originated before the ALJ's decision or after the ALJ's decision. The Appeals Council merely found that the additional evidence submitted by Plaintiff was considered but that it did not provide a reason for modifying the ALJ's decision. (TR 1).

Here, as in the Tenth Circuit's decision in <u>Krauser</u>, the dilemma is created by the Appeals Council's acceptance of new evidence that did not qualify as chronologically-pertinent evidence. In <u>Krauser</u>, the Tenth Circuit reasoned that

> [w]hen the Appeals Council accepts [non-qualifying] new evidence, the claimant obviously benefits (he may not succeed with such evidence, but that is a separate issue), hence the only 'aggrieved' party that could object is the agency. But the agency would be objecting to its own ruling. In supporting a denial of benefits on judicial review by challenging its own rulings as to the admission of the evidence on which the denial was based, the agency would inherently be offering a new, post-hoc rationale for its decision contrary to the general rule of <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 94-95, 63 S.Ct. 454, 87 L.Ed. 626 (1943), and <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

<u>Krauser</u>, 638 F.3d at 1328-1329. The circuit court in <u>Krauser</u> did not resolve the issue because the court found that even with the new evidence considered by the Appeals Council in that case the ALJ's "rejection of a depression impairment" was supported by substantial evidence in the record. <u>Id.</u> at 1329.

In this case, as the Appeals Council properly informed Plaintiff, because it denied her request for review the ALJ's decision became the final decision of the Commissioner. <u>See</u> 20 C.F.R. § 404.955; <u>Sims v. Apfel</u>, 530 U.S. 103, 106-107 (2000). Consequently, "in

12

evaluating the Commissioner's denial of benefits under the substantial evidence standard, the district court must consider qualifying new evidence submitted to the Appeals Council." Martinez v. Astrue, 389 Fed.Appx.866, 869 (10th Cir. Aug. 3, 2010)(unpublished op.)(citing O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994)). If the ALJ's disability determination was supported by substantial evidence, then the district court must "determine whether the qualifying new evidence upsets that decision." Id.

This one-page medical source opinion sets forth a checklist of mental functions, and Dr. Speegle has circled numbers on a scale of 1 to 5 indicating Plaintiff had severe mental functional restrictions which he stated had existed due to "[l]earning delay and attention deficit since early age." (TR 875). The medical source statement provided by Dr. Speegle does not indicate that it was based on any evaluation or treatment of Plaintiff, and there are no records of treatment of Plaintiff by Dr. Speegle. Rather, the statement sets forth only unsupported conclusions, including the statement that Plaintiff's "impairments or treatment" would cause her to be absent more than 3 days per month. (TR 875). These conclusions are wholly inconsistent with the other medical evidence in the record and with Plaintiff's previous work history. Consequently, the medical source statement does not provide probative evidence that detracts from or conflicts with the ALJ's decision, and the Commissioner did not err in rejecting the contents of the medical source statement.

Plaintiff's assertion that the ALJ ignored probative evidence in the mental RFC assessment authored by Dr. Massad, an agency medical consultant, is without merit. The ALJ expressly considered the mental RFC assessment by Dr. Massad and accorded the

assessment great weight.  Nothing in the ALJ's RFC assessment conflicts with the findings set forth in Dr. Massad's mental RFC assessment.  In fact, the ALJ adopted Dr. Massad's mental RFC assessment.

## V. Credibility

Finally, Plaintiff contends that there is not substantial evidence to support the ALJ's credibility finding.  As support for this argument, Plaintiff merely repeats the previously-argued and previously-addressed arguments that the ALJ ignored the evaluation reports by Ms. Bates (not Dr. Beesley, as Plaintiff repeatedly suggests) and Dr. Kates and Dr. Massad's mental RFC assessment.  The ALJ provided multiple reasons that are well supported by the record for finding that Plaintiff's allegations of disabling pain and nonexertional limitations were only partially credible.  The ALJ's step five determination was supported by the evidence, including the vocational testimony, and the Commissioner's decision should therefore be affirmed.


## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING  the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ May 20th _____, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling.

14

Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____29th_____ day of _____April_____, 2013.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE